## Case No. 9,181.

### In re MARWICK.

[2 Ware (Dav. 229) 233;[1] 8 Law Rep. 169; 3 N. Y. Leg. Obs. 286.]

District Court, D. Maine. May 31, 1845.

BANKRUPTCY — PARTNERSHIP — CREDITORS — No JOINT ESTATE—INDIVIDUAL CREDITORS.

1. Whether under the bankrupt act the creditors of a partnership can be allowed to prove claims against the separate estate of one of the partners to receive dividends, in concurrence with the separate creditors of the partner, when there is no joint estate and no living solvent partner—quaere.

[Cited in Re Johnson, Case No. 7,369.]

2. If there be any joint fund, however small, such proof cannot be allowed, although such fund may have been created by the separate creditors purchasing some of the partnership assets, actually worthless, for the purpose only of creating it; for if there be a joint fund, the court cannot, under the statute, look behind the fact, to inquire how it has been produced.

[Cited in Re Byrne, Case No. 2,270; Mead v. National Bank of Fayetteville, Id. 9,366; Re Dunham, Id. 4,144; Re McEwen, Id. 8,783; U. S. v. Lewis, Id. 15,595.]
[Cited in Harris v. Peabody, 73 Me. 269.]

This was a case of objection to a proof of a debt. [Albert] Marwick, the bankrupt, in May, 1837, entered into a co-partnership with one Frederick Davis, and as partners they purchased a quantity of provisions for the Georgia Lumber Company, to the amount of $800, for which they drew their bill on the company in favor of one Bradbury. Before the bill was paid, the company failed, and the failure of the company produced that of the copartnership of Marwick & Davis, by which the firm was dissolved. They afterwards gave their joint note for the sum remaining due, viz., $740.88. This note, Bradbury, for a valuable consideration, transferred to Dole, with notice with that it was a partnership debt. The assignee of Marwick & Davis, rendered in his account of the joint estate, Oct. 25, 1844, showing outstanding demands, in favor of the firm, to the amount of $13,000, which comprised the whole assets of the firm and which were all represented as utterly worthless. Dole, the creditor, proved his debt, June 17, 1842. The assignee, after rendering his first account, applied for liberty to compromise, or sell, the claim against the Georgia Lumber Company, which was disposed of for $40, of which a supplementary account was rendered, and the

[1] [Reported by Edward H. Daveis, Esq.]

amount paid into court, April 25, 1845, to the credit of the joint estate. The final account of the assignee of the separate estate showed assets to the amount of $545.93. Two debts have been proved and allowed against the estate, one by Charles E. Marwick, for $684.-04, and the debt of Dole. Marwick objected to the admission of Dole's debt against the separate estate.

WARE, District Judge. Two questions have been raised and argued in the present case. The first is, whether the creditors of a copartnership can, in any case, be admitted to prove their claims against the separate estate of one of the copartners, for the purpose of receiving dividends in concurrence with the separate creditors of the copartner. The second is, whether, admitting that they may in some cases, the partnership creditors can be admitted so to prove under the facts in this case.

The 14th section of the bankrupt act [5 Stat. 448] provides, when two or more persons become bankrupt who are partners in trade, that separate and distinct accounts shall be kept, in the settlement of their estates, of the joint effects of the firm and of the separate effects of the several partners, and when the whole expenses are paid, that the net proceeds of the joint property shall be applied to the payment of the joint creditors, and the separate property of each partner shall be applied to the payment of his separate creditors, and that the creditors of the respective estates shall be allowed to receive dividends from the other estate only after the creditors of that estate shall have been fully paid. This is in substance the rule established by the law, and it is quite clear where there is both a joint and separate estate, that the creditors of neither can prove against the other estate for the purpose of receiving dividends, except from the surplus remaining after its own proper creditors have been fully satisfied. This general rule for marshaling the assets and claims is taken from the English bankrupt law. But under that system there are exceptions, as well established as the rule itself. One of these exceptions is where there is no joint estate and no living solvent partner, as is the fact in the present case. In such a case, the joint creditors are allowed to prove and receive dividends against the separate estate, in concurrence with the separate creditors. Story, Partn. § 372; Eden, Bankr. Law, 172. But to bring the case within the exception, there must be absolutely no joint estate. If there be any, however small, the exception is not allowed, and it has been rejected where the joint estate amounted only to •£1. 11s. 6d. And again, there must be no living solvent partner—and solvent is here used not in its ordinary sense, that is, an ability to pay the whole of one's debts—but in the sense of non bankrupt partner. For though he may be in fact insolvent and unable to pay the whole of his debts, if he be not actually in legal bankruptcy, the exception is excluded and the general rule prevails. Ex parte Janson, 3 Madd. 229. The principle is, that while there is any fund, however small, to which the joint creditors may resort, they cannot come against the separate estate in competition with the separate creditors; and though a person may be insolvent, if he be not in actual bankruptcy, and thus divested of all his property, he may still have the ability to pay part of his debts, and this possibility is held to be enough to exclude the joint creditors from sharing in the separate estate of the bankrupt partner, except in the surplus after the separate creditors are paid. Such is the general rule under the English bankrupt laws, and such the character of the exception to the rule, which it is supposed may be admitted under our law. Our statute has adopted the general rule, without taking notice of any of the exceptions. It does not appear to contemplate the case of there being no joint property, and as it passes it by in silence, it may be a grave question, whether it does not leave such a case open to the application of the general principles of equity. But as there is a joint fund in the present case, it is immaterial whether it does or not, unless the court may look behind the fact of there being a joint fund, to the manner in which it has been created.

It appears from the proofs in the case, or the facts which are admitted, that the assignee rendered in his first account of the partnership estate in October, 1844, in which the whole of the assets, consisting of outstanding demands, are represented as worthless; that afterwards he applied for liberty to compromise or collect a debt, on which he obtained $40, and rendered into court a supplementary account; and it further appears, that the money to take up this note was actually advanced by Charles E. Marwick, as creditor of the separate estate. Now, the argument is, that if the exception to the general rule of marshaling the assets and debts, established under the English bankrupt system, may be admitted under our statute, then, as it is founded on the general principles of equity and distributive justice, a creditor of the separate estate ought not to be permitted to defeat the equity of the joint creditor, by purchasing for a small sum a partnership demand, for which nothing could have been obtained but for this purpose. Allowing the premises on which the argument is founded to be correct, it does seem to present itself with some force to the equitable consideration of the court. The effect in the present case will be, that the separate creditor will receive nearly the whole of his claim and the joint creditors but a small percentage, if each is restricted to his own appropriate fund.

But after considerable reflection I have come to the conclusion, that, admitting the assumption on which the argument is found-

ed, it cannot prevail. In the first place, if this matter is viewed as a struggle between the two classes of creditors, it is a strife on the part of the separate creditors, not de lucro captando, but de damno vitando. A creditor may, without any grave imputation in the forum of conscience, be allowed all fair and legal means to avoid a loss, though it may incidentally be at the expense of another creditor. And though it is a maxim in equity jurisprudence that equality is equity, yet the court holds the maxim subordinate to legal priorities, which one party may by his diligence acquire over another. And further, the whole subject of marshaling the assets and claims between the joint and separate creditors in bankruptcy, involves some of the most difficult problems that occur in the whole range of jurisprudence. It has hitherto been found impracticable to establish any general rule that will meet the equities of all the various cases that come up in practice; and the courts have been finally compelled, instead of subjecting the whole to a rigorous analysis and extracting a system of rules which will carry out the principles of natural justice, to cut down the difficulties by establishing a general rule, which at first seems conformable to general equity, and then to limit and qualify it by a number of arbitrary exceptions, in order to meet the particular equities of particular cases. Eden, Bankr. Law, 169, 174; Story, Partn. §§ 374, 382.

This system is admitted to be not entirely satisfactory; it has sometimes been departed from and again restored, and is now adhered to, not because it is in all respects conformable to the principles either of positive law or of natural equity, but partly as a rule of convenience, as it has been sometimes called, and partly because no system has been hitherto presented as a substitute, which is not found to be encountered by equal difficulties. Dutton v. Morrison, 17 Ves. 207; Ex parte Elton, 3 Ves. 238.

If, then, we admit that the equitable doctrines of the English courts, in the administration of their bankrupt law, are applicable under our statute, how will the case stand? In the first place, if this fund had been brought into court in consequence of the purchase of this note by any other person than a separate creditor, it is clear there would have been an end of the case. What difference does it make that he has advanced the money, and thus created the fund? It was the duty of the assignee to make the most of the assets. If, with the knowledge that $40 could be obtained by the transfer of this note, he had rendered it into court as worthless, he might have been compelled to pay the money out of his own pocket. The fund would then have been produced in this way, and the joint creditor would have been in the same condition he is now. It was not for the assignee to inquire who the purchaser was, or what were his motives in making the purchase. And even suppose that he

might have done this and refused to sell to a separate creditor for such a purpose, the creditor might have gone to the debtor and furnished him the money to take up the note, and thus indirectly obtain the same result. And indeed this seems to have been the course adopted in the present case; for the note was nominally taken up by one of the company, who was liable upon it, though the money was advanced by the creditor. So that if we were to adopt the principle of going behind the fact of there being a fund, to inquire whether that had not been inequitably created by the management of the separate creditors, the court would at once be involved in inextricable difficulties.

The object of this inquiry is to reach the supposed equity of the case, by making a more just and equal distribution of the assets between the different classes of creditors, and to prevent the separate creditors from creating out of worthless assets a small fund for the sole purpose of preventing the joint creditors from sharing with them the separate assets. But after all, is not this supposed equity more apparent than real? Each class of creditors originally trusted to different funds and different responsibilities, one to the social and one to the separate responsibility. The general equity would, therefore, seem in all cases to confine each class of creditors to that fund which they primarily trusted, unless in a case where there had been a fraudulent or improper abstraction from one estate for the purpose of increasing the other. And this is the general rule, not only in bankruptcy, but in general equity. Each class of creditors has a right of prior payment out of the estate to which he is supposed to have given credit, and the other class can only go against the surplus. If a creditor of one partner attaches partnership property, his attachment only holds the right or interest which the parties shall be found to have in the property after an account is taken and the joint creditors are paid. Kent, Comm. (5th Ed.) 64, 65, note c; Story, Partn. § 363. The equity of each class of creditors against their proper fund, certainly seems to be stronger than that of the other class who never could have looked to it for their security, except so far as there might be a surplus after discharging its own proper liabilities.

The general rule, therefore, has its foundation in natural equity, and it is established by the law. The law itself makes no exception. Now, admitting the case of there being no joint estate to be a casus omissus, not contemplated and therefore not within the purview of the law, it certainly covers all cases where there is a joint fund, without inquiring into its origin. And it is a rule in the construction of statutes, that when the statute covers the whole case in all its circumstances, and makes no exceptions, none can be made by the court.

My opinion, on the whole, is, that the proof

cannot be admitted against the separate estate, in competition with the separate creditors.