## CROCKETT & a. v. CRAIN.

The separate creditors of a partner have a preference over the separate estate of their debtor, for the satisfaction of their debts.

Where a partnership creditor attached the separate estate of one of the partners, being an equity of redemption of certain real estate, and, before the entry of the action, the partner was declared a bankrupt, and his assignee subsequently sold the property attached and applied the avails to the payment of his separate debts under the order of the District Court — *Held*, that the purchaser at the assignee's sale would hold the property as against the attaching creditor.

WRIT OF ENTRY, in which the demandant claims to recover a tract of land in Walpole, of which he alleges he was seized in fee till disseized by the tenant. The tenant pleaded the general issue.

The demandant claimed title to the property under a levy of execution upon a judgment recovered by him at the court of common pleas for this county, September term, 1849, against Philip Peck and William Bellows, partners under the firm of Philip Peck & Co., the action being commenced by an attachment of the demanded premises and other estate, Oct. 10, 1842.

He also claimed the property under a mortgage made by P. Peck, in 1839, to M. Cochran, on which a suit for foreclosure had been brought and a writ of possession executed. This mortgage and judgment were assigned by the mortgagee to F. Vose, and, before the foreclosure was completed, the money was paid by the demandant to Mr. Vose, who took the money, but denied the right of the demandant to pay it, and refused to accept it in satisfaction of the mortgage.

To prove these positions he introduced —

1. A writ in favor of G. W. Crockett, the demandant, and R. W. Shapleigh, partners under the firm of Crockett & Shapleigh, against said Peck and William Bellows, partners under the firm of Philip Peck & Co., dated October 8, 1842, returnable at the court of common pleas, April term, 1843, containing one count for money had and received, $1000.

2. A certified copy of a return from the clerk's office of the town of Walpole, upon a copy of the original writ there filed, dated October 10, 1842, stating an attachment made on that day

of the demanded premises, with other estate, real and personal, by the description of " all the right, title and interest of Philip Peck, William Bellows and Philip Peck & Co., or either of them, in and to all land, &c., in Walpole, and also one piece of land described, including the demanded premises, and the leaving with the town-clerk of Walpole an attested copy of the writ and return, and paying him his fees.

3. A specification filed in that action, viz: a note of hand for $878.46, dated April 27, 1842, made by P. Peck and W. Bellows, under the firm of P. Peck & Co., payable to Crockett & Shapleigh, or order, on demand, with interest, and endorsed November 5, 1842, $30.10.

4. An original note, filed in the action agreeably to the specification.

5. An execution dated September 13, 1849, reciting a judgment in favor of Crockett & Shapleigh, September 11, 1849, at the court of common pleas, held on the second Tuesday of September, for 1849, $970.07 damages, $29.76 costs, " to be levied only of and upon the goods, chattels and estate of said P. Peck and W. Bellows, or either of them, which was attached on the original writs, as by the return and pleadings appears of record.

6. A return upon the execution, dated September 22, 1849, stating that the returning officer had taken all the right in equity of the debtor, P. Peck, which he had, October 10, 1842, to redeem a tract of land, (described, including the demanded premises,) being the same premises attached on the original writ, and the same which P. Peck, about Jan. 17, 1839, conveyed in mortgage to Martha Cochran, who afterwards, at the court of common pleas, March term, 1845, obtained judgment thereon, for possession, and thereafter assigned said mortgage and judgment to F. Vose : upon and of whom, about the 20th of June, 1846, at the request of Crockett & Shapleigh, he demanded an account in writing of the amount due upon said mortgage, and said Vose rendered such account, in which he stated the balance due him at $883.18, which sum he paid, June 24, 1846, at the request of Crockett & Shapleigh, who furnished the money.

At the time of the sale, after mentioned, there was due on this mortgage to Crockett & Shapleigh $1056.48, and September 22, 1849, he gave notice to each of the debtors, and to Aaron P. Howland, the several assignee of said Peck and of said Bellows, notice of the sale of said equity, October 25, 1849, and posted up like notices at two public places, &c., and on that day he sold the right to said Crockett and said Shapleigh for $450, and delivered them a deed in legal form, and applied the money, deducting fees, for and in discharge of the execution.

The execution was returned March 19, 1850, and recorded March 16, 1850.

7. A deed, Hope Lathrop, deputy sheriff, to Crockett & Shapleigh, dated October 25, 1849, recites the execution, the consideration, $450, conveys the right in equity of P. Peck, October 16, 1842, of redeeming the land sold, including the demanded premises, being part of " the estate attached upon the original writ, and which the judgment directed to be seized and levied upon" in satisfaction of the said execution, &c., subject to redemption, &c., witnessed and acknowledged, &c.

8. A deed of mortgage of P. Peck to Martha Cochran, dated January 17, 1839, acknowledged and recorded, which, in consideration of $1216.67, conveys the tract, (levied on, including the premises,) conditioned to pay $1216.67, and interest annually, agreeably to two notes of even date, for $608.33, payable to M. C., or order, in one and two years.

9. A note dated January 17, 1839, for $608.33, in two years, payable to M. Cochran or order, and signed Philip Peck.

10. A writ in favor of M. Cochran against P. Peck and Aaron P. Howland, dated December 16, 1844, returnable on the 1st Tuesday of April, 1845, in an action founded on the above mortgage.

11. A writ of possession, dated May 30, 1845, reciting a judgment in favor of M. Cochran against P. Peck and A. P. Howland, rendered in the court of common pleas, March term, 1845, for a tract of land, (embracing the premises,) and for $9.21 cost, and upon it a return of possession delivered to M. Cochran, June 26, 1845.

12. A copy of an assignment of M. Cochran to F. Vose, dated December 22, 1845, conveying, in consideration of $858.25, Peck's mortgage, (described) her judgment thereon, the debt secured, and all right to the premises conveyed by it.

Levi Chamberlain, Esq., testified that he was attorney for Crockett & Shapleigh in their action against Peck & Co.: That on the 24th of June, 1846, he paid to F. Vose, Esq., $883.18 in behalf of Crockett & Shapleigh, attaching creditors of Philip Peck & Co., to redeem a mortgage from P. Peck to Martha Cochran, assigned to Vose : That Judge Vose said, " I shall take the money, because you offer it to me, and because I do not wish to jeopardize any of my rights by refusing it. But I do not accept it as a tender, because I deny your right to make me any tender, and I distinctly declare that I do not waive nor intend to waive any right, advantage or objection by taking this money."

For the tenant it was claimed, that he was entitled to the property in question, because this property was the several property of Peck, and not of P. Peck & Co., and the debt of the plaintiffs was a debt of Philip Peck and William Bellows, under the firm of P. Peck & Co. ; that on the 21st of December, 1842, P. Peck was a resident of the District of New-Hampshire, &c., and was decreed by the District Court of the United States for that district, upon his petition, &c., to be a bankrupt, and on the 28th of said December Aaron P. Howland was duly appointed his assignee. On the 22d of June, 1846, said Howland as assignee sold this property, and made his deed of it to H. Foster, as the property of P. Peck, and made his return of the sales and money to the district court, which decreed the same to be paid to the separate creditors of P. Peck. Foster conveyed his interest to the defendant.

The tenant also claimed to hold the demanded premises under an assignment by F. Vose to H. Foster, of the Cochran mortgage, after the supposed tender of Crockett & Shapleigh, but before Foster's conveyance to the defendant. The tenant offered in evidence —

1. A copy of decree in bankruptcy, December 21, 1842, in the District Court of the New-Hampshire District, against P. Peck, upon his petition in his private capacity and as one of the firm of P. Peck & Co.

2. Deed of Aaron P. Howland to Henry Foster, dated June 22, 1846, acknowledged and recorded, which recites the decree of bankruptcy of P. Peck, (as before stated; ) that Aaron P. Howland was appointed assignee, December 28, 1842, and authorized to sell the estate of the bankrupt, and in consideration of three hundred and ten dollars conveys the right of redemption of a tract of land in Walpole, (which embraces the demanded premises.)

3. A copy of a decree appointing Howland assignee, December 28, 1842.

4. Copy of schedule B, containing, as private property of Philip Peck, " a small tract of land in Walpole village, with buildings, mortgaged to Martha Cochran for security of a note of $608.33." This description covers the land in controversy.

5. On the back of the assignee's deed is an instrument as follows :

Received of Henry F. Crain, of Springfield, one dollar, in full as consideration for my interest in the within deed and all I may hold by virtue of the same. Walpole, February 16, 1850.

　　Witness.　　　　　　　HENRY FOSTER. 　 [L. S.]

6. An assignment of F. Vose to H. Foster, dated June 24, 1846, acknowledged June 25th, but not recorded, conveying, in consideration of $883.18, all his interest, &c., in the mortgage of P. Peck to Martha Cochran, a judgment recovered thereon, the debt secured and the land conveyed by the mortgage, &c., and all benefits, &c.

7. A copy of a return of A. P. Howland, assignee of P. Peck, dated May 12, 1852, under oath, which contains, under date of February 27, 1846, " received $310.25, of H. Foster, for equity of redemption of real estate," admitted to be the same in controversy.

8. A copy of a report to the district court, by John Kelley,

commissioner, " in the matter of Philip Peck, *sole*," the sum of $357.59 to be distributed, (including the above sum of $310.25) with a schedule of dividends of that sum, to the creditors of P. Peck, and a decree of said court accepting this report.

At the date of H. Foster's conveyance or deed to the defendant, it was admitted that the defendant was in possession of the premises, claiming the same.

The claim of the plaintiff was admitted to be valid, as were the private claims proved against the bankrupt's estate.

A verdict was thereupon taken for the defendant, under the direction of the court, subject to the opinion of this court upon the facts before stated, which the plaintiff moves may be set aside, and for a new trial.

*Wheeler & Faulkner*, for the plaintiffs.

By the attachment of Peck's separate estate prior to any act of bankruptcy, Crockett & Shapleigh acquired a lien, or security, upon the property so attached, valid by the laws of this State, and within the proviso of the bankrupt act of August 19, 1841. *Kittredge* v. *Warren*, 14 N. H. 509 ; *Kittredge* v. *Emerson*, 15 N. H. 227 ; *Peck* v. *Jenness & a.*, 7 Howard S. C. R. 612.

This lien was duly perfected by judgment, the levy of execution, and the deed of the officer.

The contest is not in this case as in *Jarvis* v. *Brooks*, 3 Foster 136, between partnership creditors and separate creditors, both claiming under the laws of this State, but between creditors of the firm, claiming title under the laws of New-Hampshire, and purchasers of a title purporting to be derived under the bankrupt act of August 19, 1841.

If the claim of Crockett & Shapleigh had been a separate debt of Peck, there would be no dispute as to the demandant's title ; the authorities above cited are conclusive of that matter.

The separate estate of a member of a partnership is liable for the partnership debts, and may be attached and held on such debts, unless the separate creditors interfere.

Until such interference the lien so acquired is as valid as an

attachment of partnership property on the same claim would be ; and even if such lien were conditional or contingent, it would be no less a lien within the proviso of the bankrupt act. *Kittredge* v. *Warren*, before cited.

An attachment of the separate property of a member of a firm by a partnership creditor would not necessarily be defeated or destroyed by an attachment by a separate creditor. The only effect would be to give the separate creditor a preference in case he obtained judgment ; and if there were other separate property sufficient to satisfy the separate debt, or the property attached were more than sufficient to satisfy such debt, the lien created by the attachment on the partnership debt would still subsist, and might be made effectual for paying that debt.

The mere existence of separate debts cannot operate to defeat an attachment on a partnership debt, and a lien on Peck's separate estate having been acquired by Crockett & Shaplegh's attachment on the 10th day of October, 1842, the demandant's title must prevail, unless it can be shown that this lien has been in some way defeated. And if so, how has it been defeated ? Not, as might perhaps have been done, by attachments on Peck's separate debts between October 10 and December 21, 1842. Not by virtue of any of the provisions of the bankrupt act, for liens of this character are preserved by the express terms of the proviso of that act.

2. The payment to Vose of the sum due on the Cochran mortgage operated as an assignment of the mortgage ; Vose's protest to the contrary notwithstanding. The court will treat such payment either as a discharge or an assignment, as may best subserve the purposes of justice, without regard to the gratuitous declarations of one whose rights to interfere or dictate in the matter have been extinguished by payment of his claim. Rev. Stat., chap. 184, secs. 6, 7, 8 ; *Robinson* v. *Leavitt*, 7 N. H. 100 ; *Bailey* v. *Willard*, 8 N. H. 429 ; *Willard* v. *Harvey*, 5 N. H. 252 ; *Heath* v. *West*, 6 Foster 191 ; *Towle* v. *Hoit*, 14 N. H. 61 ; *Thorndike* v. *Norris*, 4 Foster 454.

3. Nothing passed by the assignment from Vose to Foster.

Crockett *v.* Crain.

Having received the amount of his claim, Vose had no assignable interest.

*Cushing*, for the defendant.

By the law of New-Hampshire the separate property of partners must be applied in the first instance to the payment of their separate creditors. *Jarvis* v. *Brooks*, 3 Foster 136 ; *Ferson* v. *Monro*, 1 Foster 462.

1. The property in question, being the property of Philip Peck, had been at the time of the levy of the plaintiffs, lawfully applied in payment of his separate creditors. Bankrupt Law of 1841.

2. The demandants acquired no right or title by the tender to Mr. Vose, made June 24, 1846. They could only acquire a right in virtue of their own right as attaching creditors. But when the tender was made, the *right* to redeem had been lawfully sold by the assignee of the separate estate of Philip Peck; so that they had in fact no interest to protect, and no right to make the tender. Comp. Stat., chap. 195, sec. 8, *et seq.*

3. The equity of redemption having been duly conveyed to Henry Foster, the assignment by Mr. Vose of the Cochran mortgage, the mortgage not having been foreclosed, amounted in fact to a *discharge* of the mortgage, so that Henry Foster's title was after that time wholly under the assignee's deed.

The tenant being in possession, February 16, 1850, the deed of Henry Foster of that date was a good conveyance as against him and his heirs, to all the interest he then had in the land. Comp. Stat., chap. 136.

4. But whether the title be in the heirs of Henry Foster or in the tenant, is, for the purposes of this case, immaterial. The tenant is in possession, and his possession cannot be disturbed by the demandants unless they show some title which they do not. They never had any *seizin*, or title of any kind.

EASTMAN, J. It was settled in *Jarvis* v. *Brooks*, 3 Foster 136, after a thorough examination of the question, that the

separate creditors of a partner have a preference over the separate estate of their debtor, for the satisfaction of their debts; and that where land of one partner is set off on execution, for a debt due from the partnership, and afterwards the same land is set off on execution for a separate debt of the partner, the separate creditor of the individual partner will hold the land, and such must be regarded as the law in this State. The following among other authorities sustain that decision. *Merrill v. Neill,* 8 Howard's Sup. Court 414; *Morrison v. Blodgett,* 8 N. H. 248; *Bell v. Newman,* 5 Serg. & Rawle 93.

In *Jarvis v. Brooks* the attachment on the partnership debt was made before that on the individual debt, and the set-off on the execution recovered in the former suit was made six months before that in the latter.

The rule laid down in that case goes to the extent to protect the separate property for the separate debts, until it shall be actually and legally appropriated for the partnership debts. The fact that a lien has been created by attachment in favor of a partnership creditor, does not give him any advantage over the separate creditor; for the latter may, notwithstanding the previous attachment, attach and hold the property on his debt. Until the property is actually and legally applied to the payment of the partnership debt, the separate creditor may interfere to prevent such application, and cause his own debt to be first satisfied.

In the present case, the attachment on which the plaintiffs' title is founded was made on the 10th of October, 1842, on a partnership debt; and on the 21st of December following, before the action was entered in court, Peck, the debtor, was declared a bankrupt, and on the 28th of the same month an assignee was appointed. At any time between the attachment and the decree of bankruptcy, the separate creditors of Peck could have attached the property and held it against the attachment that had been made on the partnership debt.

The decree in bankruptcy took from the creditors the power of proceeding against Peck or his property to secure their debts.

The only course then left to them was to prove their debts under the commission, and receive such dividend as might be made from the avails of his property.

The general rule for distribution in bankruptcy is, that partnership property shall pay partnership debts, and separate property separate debts. Such are the provisions of the bankrupt act of 1841, and such also are the authorities. *Gray* v. *Chiswell*, 9 Vesey 118; *Murray* v. *Murray*, 5 Johns. Ch. 72; *Ex parte Cook*, 2 P. Williams 500.

As the separate creditors of Peck by the decree of bankruptcy were deprived of all power to enforce the payment of their debts, and all power to stay the proceedings under the attachment, it would be inequitable to hold that the separate property attached on the partnership debt should be thus appropriated to the payment of such debt.

It is not to be doubted that had the attachment been made upon partnership property it would have created a lien valid by our laws and within the proviso of the bankrupt act. *Kittredge* v. *Warren*, 14 N. H. 509; *Kittredge* v. *Emerson*, 15 N. H. 237; *Peck* v. *Jenness*, 7 Howard 612. But is an attachment of separate property, founded upon a partnership debt, to be held thus valid against separate creditors? We think not. The attachment does not prevent the right of property from passing to the assignee, for it is not a lien that could operate to defeat separate creditors before the bankrupt decree; and as against them it should have no more effect after than before the decree, as by the decree their power to proceed against the debtor is taken away.

We are, therefore, of opinion that the demandants cannnot sustain their suit by virtue of the attachment and levy. Can they do it upon the mortgage from Peck to Martha Cochran?

At the time of the attachment Martha Cochran held a mortgage against Peck upon the premises, dated January 17, 1839. This mortgage, on the 22d of December, 1845, was assigned to Mr. Vose. On the 24th of June, 1846, two days before the lien would have become perfected by virtue of the judgment obtained

Crockett *v.* Crain.

on the mortgage, the attaching creditors made a tender of the amount due on the mortgage to Mr. Vose, and the demandants claim to hold under that mortgage.

If there were no other difficulties surrounding the question, and the demandants had the legal right at the time to make the tender so as to stay the foreclosure, the title to the mortgage would have so far passed as to secure the rights of the creditors. *Towle* v. *Hoit,* 14 N. H. 61; *Robinson* v. *Leavitt,* 7 N. H. 100; *Rigney* v. *Lovejoy,* 13 N. H. 252; *Wilson* v. *Kimball,* 7 *Foster 300.*

But by the decree in bankruptcy all the right of Peck to the premises passed into the hands of the district court for the benefit, in the first instance, of Peck's separate creditors. When he went into bankruptcy these premises were included in his schedule as his private property, and, upon the equity of redemption being sold by the assignee, the proceeds were decreed by the district court to be paid to his separate creditors, and were so paid. It was sold for their benefit and went to satisfy in part their debts. The district court was acting for them, and the same reasoning which proves that the attachment could not operate as a lien to defeat the rights of the separate creditors, shows, that as against them the tender of the partnership creditors could confer no title that would be paramount to that acquired by a purchaser at an assignee's sale, made for the purpose of converting the property into funds to divide among the separate creditors. By the bankruptcy the property passed beyond the reach of the demandants, and they had no interest to protect by redeeming the premises.

As against the separate creditors and this tenant, who holds by a title derived from the district court, and founded upon the debts of the separate creditors, the demandants cannot prevail. In such a case neither their attachment nor their tender could give them a good title.

We are, therefore, of opinion that the ruling of the court below was correct, and that there must be

*Judgment on the verdict.*