## Esack Estate

*Maxwell L. Davis*, for petitioners.

*Nathan I. Miller*, for respondent.

SHOYER, J., November 19, 1954. — Can a widow claim her $750 exemption out of partnership assets in the hands of an assignee for the benefit of partnership creditors ahead of the creditors of the partnership? This question is raised by the joint petition of the administrator c. t. a. of the estate of decedent and the latter's widow, and the responsive answer filed by the assignee for benefit of the partnership creditors.

David Esack died June 30, 1954, and in the pleadings it was admitted that both decedent and the partnership were insolvent at the time of his death. On July 12, 1954, the administrator c. t. a. and the surviving partner jointly executed an assignment of partner-

ship assets for the benefit of creditors of the partnership to one George J. Cherry. At the argument before the court en banc it was admitted by counsel for petitioners that the creditors of the partnership would probably receive but 55 or 60 cents on the dollar, leaving nothing for the claims of individual creditors of decedent.

The widow's claim (now called family exemption) arises under section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.211, reading as follows:

"The spouse of any decedent . . . may retain or claim as an exemption and as a reasonable requirement for support during the settlement of the estate, either real or personal property, or both, not theretofore sold by the personal representative, to the value of $750.00."

Reference to the comment following this section, made by the Joint State Government Commission of the Pennsylvania Legislature, discloses that this section is based on section 12(a) of the Fiduciaries Act of June 7, 1917, P. L. 447; which in turn was founded upon the Act of April 14, 1851, P. L. 612: Bell's Estate, 139 Pa. Superior Ct. 11 (1939).

Traditionally, the widow's claim for exemption has received most favorable treatment at the hands of the courts. The underlying and guiding principles have been declared in a host of cases: Stokes Estate, 167 Pa. Superior Ct. 128, 131 (1950). The Fiduciaries Act of 1949 is a revision and consolidation of the prior law, and there is nothing in section 211, et seq., to indicate that the legislature intended to radically change the existing law on the subject. "The authorities construing these former statutes, therefore, are persuasive in the interpretation of the section under consideration:" Bell's Estate, supra, at p. 12. In Miles' Estate, 272 Pa. 329, 339 (1922), it was held that "when the statute under consideration is a general

revision, 'the law as therein written will be deemed to be the same as it stood prior to the revision, unless we find from the statute itself, or its history, a clear intention to change it': In re Lis's Est., 139 N. W. 300, 302, and cases there cited; see also authorities in 36 Cyc. 1223.''

As to the nature and interpretation of the earlier statutes it has been said:

"The exemption provision in the Act of 1917 is not a statute of distribution, and the exemption is not an inheritance. It is wholly a gratuity, based upon the existence of the family relationship at the time of decedent's death: Hildebrand Estate, 262 Pa. 112, 104 A. 866; Est. of John B. Fenyo, 105 Pa. Superior Ct. 560, 161 A. 606. . . The statutory exemption is a preferred claim or gift of the law prompted by consideration of public policy; Peebles' Estate, 157 Pa. 605, 27 A. 792, and exemption statutes have always received an interpretation consistent with their conception; Hildebrand's Estate, supra. These statutes have always been considered rather according to their spirit than to the letter: Nevin's Appeal, 47 Pa. 230. 'The purpose of that Act [April 14, 1851, P. L. 612] was to make immediate provision for the wants of the family when the head of it is removed by death. . . . This is obvious from the language and history of the law. . . The motive of the enactment is clearly traceable, in the legislation of the State, to the family necessity:' Hettrick v. Hettrick, 55 Pa. 290;'' Bell's Estate, supra, at pp. 13, 14 and 15.

"The exemption has been variously described: a gratuity, Cramm's Estate, 127 Pa. Superior Ct. 446, 193 A. 135, affirmed 329 Pa. 528, 198 A. 653; 'a preferred claim or gift of the law, prompted by considerations of public policy', Peebles' Est., 157 Pa. 605, 609, 27 A. 792; an independent bounty whereby the exempted property is withdrawn from the estate and the

general course of administration. Compher v. Compher, 25 Pa. 31. It is not an estate which passes to the widow by will or under the intestate laws. It is an inchoate right of the widow in her husband's estate which becomes complete only when the exemption is claimed and allowed. Hildebrand's Est., 262 Pa. 112, 104 A. 866; Murray Est., 158 Pa. Superior Ct. 504, 45 A. 2d 411.": Stokes Estate, supra, at p. 131.

A liberal, rather than a strict literal construction, is to be applied to this latest codification: Gravatt's Estate, 50 D. & C. 679, 681, 682 (1944); especially in view of the fact that the legislature itself has broadened the exemption by extending its privileges to widowers and by increasing the amount from $500 to $750.

Purchase money mortgages still retain their priority as under the earlier statutes (section 216), but case law protecting all mortgagees is not changed by the Act of 1949, and the legislature is apparently satisfied that the reasoning of our Supreme Court in Kauffman's Appeal, 112 Pa. 645 (1886), fully justifies the protection there extended to all such lienholders.

It is significant, however, that payment of the widow's exemption has always been made out of assets belonging to decedent or in the hands of his personal representative. We know of no case where the widow's claim has been addressed to the assignees for the benefit of partnership creditors, and counsel for petitioners has cited no such authority to us. Just as the widow's rights are based on statute, so are the duties and responsibilities of respondent assignee. These are set forth in section 40 of the Uniform Partnership Act of March 26, 1915, P. L. 18, 59 PS §102, as follows: The assignee is required to distribute the *assets of the partnership* in payment of "the liabilities of the partnership" to creditors in the following order:

"(b) I. Those owing to creditors other than partners,

"II. Those owing to partners other than for capital and profits,

"III. Those owing to partners in respect to capital,

"IV. Those owing to partners in respect of profits. . . .

"(h) When partnership property and the individual properties of the partners are in the possession of a court for distribution, partnership creditors shall have priority on partnership property, and separate creditors on individual property, saving the rights of lien or secured creditors as heretofore.

"(i) Where a partner has become bankrupt or his estate is insolvent the claims against his separate property shall rank in the following order:

"I. Those owing to separate creditors,

"II. Those owing to partnership creditors,

"III. Those owing to partners by way of contribution."

Long before the adoption by the Pennsylvania Legislature of the Uniform Partnership Act, case law had established the distribution of assets in the same order as set forth in subsection (h), supra. Thus in Black's Appeal, 44 Pa. 503, 509 (1863), our Supreme Court adhered to "the principle that where there are partnership property and partnership creditors, and separate property and separate creditors, each class of creditors must look to their respective estates, without jostling each other for payment in the first instance. Each has its priority on its respective estate; after it is satisfied, the other may come upon the residue, according to its several legal and equitable rights."

As pointed out above, the widow is claiming not against the separate property of decedent, but against property which admittedly belonged to the partnership

at the time of his death. She is also advancing her claim before the demands of the partnership creditors have first been satisfied. There is nothing either in the Fiduciaries Act or the Uniform Partnership Act which will permit this court to prefer the widow's claim to that of the general partnership creditors. Her counsel relies on Girton's Estate, 17 D. & C. 33 (1931), where a widow was held entitled to her exemption out of the assets of the insolvent estate of her husband as an obligation having priority over a claim of township supervisors for road taxes received by decedent as tax collector and mingled with his general assets. The supervisors claimed priority of the funds as *trust* funds and would have been sustained in their demands had they been able to trace them, which they failed to do. This case may be readily distinguished from the present situation where the funds in the hands of the assignee are required by statute to be distributed as trust funds for the partnership creditors and the widow makes no claim that they are or were part of her husband's individual estate. Her counsel argues that to permit a widow's exemption against creditors of the insolvent business of a deceased sole proprietor and not allow it where decedent was engaged in a partnership business would amount to an interpretation of the exemption statutes inconsistent with their conception. Granted that the equities in his argument are of a moving nature, the law, nevertheless, is to the contrary; and while this court will always administer equity within the scope of its jurisdiction, nevertheless, it is a statutory court and there is a limit beyond which it cannot go.

The death of decedent dissolved the partnership (section 31 (4) of the Uniform Partnership Act of March 26, 1915, P. L. 18, 59 PS §93), and the surviving partner, or the assignee in this case, became vested with

authority to wind up its affairs: Froess, Administratrix, v. Froess, 284 Pa. 369, 373 (1925); sec. 33(1) (*b*) of the Uniform Partnership Act, 59 PS §95. Neither petitioner may interfere with him in the performance of his lawful duties, and this court lacks authority to direct him in the performance thereof. This court has no right to place its hand in his pocket and to extract therefrom this widow's exemption.

The Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 301(6), 20 PS §2080.301(6), gives this court "control" over "all fiduciaries of estates and trusts of which the court has jurisdiction". The assignee for partnership creditors does not come within the purview of a fiduciary subject to the jurisdiction of this court either by definition (section 102(4)) or judicial decision. Should the future prove that contrary to the admission of insolvency contained in the pleadings, the assignee has funds left over after payment of the general partnership creditors then, certainly, such balance would be subject to the claim of petitioners, whose claim for the exemption is now of timely record with this court. This administrator c. t. a. having reduced such funds to his possession, the widow may then renew her claim for the family exemption. Nothing which has been said above is to be construed as precluding her from pursuing her rights in the event of such an unexpected change in the present insolvent status of the partnership.

Accordingly, we shall enter the following

### Decree

And now, November 19, 1954, the joint petition of Bessie Esack, and Louis Esack, administrator c. t. a. of the estate of David Esack, deceased, claiming the family exemption of $750 out of partnership assets in the hands of respondent, George J. Cherry, is dismissed without prejudice.