People agt. Mallon.

## N. Y. SUPERIOR COURT.

THE PEOPLE agt. FRANCIS MALLON and JOHN FITZPATRICK.

*A court of special sessions is a court of limited jurisdiction;* it has no jurisdiction but what is given by statute; its record or minutes must show affirmatively that it has juristiction, and no presumption will be indulged in favor or support of such jurisdiction.

The court cannot acquire jurisdiction to try a prisoner for an aflense, unless it appear *affirmatively* in the proceedings had before trial, that the prisoner expressly *waived his right to a trial by jury.* It will not do to ask the prisoner if he elects to be tried by the court of special sessions, but the question must be clearly put to him, *if he waives a trial by jury;* and after answering yes or no, that fact must appear clearly and affirmatively.

Even if the return of the special sessions shows that the question had been put to the prisoner, whether he had waived a trial by jury or not, he has a right to traverse such a return and show its falsity—the court not being a court of record.

*Special Term, March,* 1870.

THIS is an appeal by the prisoners on separate applications, through writ of *habeas corpus* to this court, asking to be discharged from imprisonment. I will consider both cases together.

The prisoners were arrested on the night of the 23d of January, 1870, at midnight. On the 29th of same month, they were sent before the special sessions of this city; were tried and convicted of assault and battery, and were each sent to prison for six months.

The following is the testimony taken at trial.

CHARLES MINER, *sworn :*

Q. What did those men do to you?

A. Well, sir, I was on duty at the railroad depot, between 129th and 130th Streets, and there was a couple of ladies in the railroad depot, and a young man with them, and the young ladies said to me: "I wish you would not

let those men bother us;" and I thought they were acquainted, perhaps, and I said to the prisoners: if you do not know the young ladies, you should not have spoken to them; and I started to go to 129th Street, and that was the last of anything that I knew—I was knocked senseless.

Q. You hadn't said anything more than that they hadn't any right to address these ladies except they were acquainted?

A. Yes, sir.

Q. You knew nothing further till you were struck on 129th Street corner?

A. Yes, sir.

Q. Did they cause the blows on your face?

A. Yes, sir; I think it was nearly two o'clock in the morning; I must have been struck very hard.

*Cross-examined:*

Q. You do not know, of your own knowledge, who struck you?

A. No, sir; There was a young man with the ladies; do not know that the prisoners knew the young man; know they were not with the young ladies; the ladies are in court.

BENJAMIN BATES, *sworn:*

Q. Did you see the assault committed on your brother officer?

A. No, sir; I heard an alarm rap, and the officer was lying with his face in the mud, and I did not know him, and I put him on a stoop, and some other officers came up, and I started in pursuit of those men, and they ran over the bridge, and I went about three quarters of a mile and then I started back, and then I met Mallon, and I heard from John Doyle previous to that about it; I pursued them into Westchester county; I chased Mallon; I did not find the other one until the next day.

*Cross-examined.*

Q. Did you chase Mallon?

A. Yes, sir.

Q. Was he running from you?

A. I heard a footstep going across the bridge, and I did not stop a second.

Q. Where did you go after Mallon?

A. I went into the——

Q. What length?

A. Perhaps three quarters of a mile; I ran; I heard footsteps on the bridge; Mallon was in the street when arrested; Mallon is a blacksmith, I believe.

JOHN DOYLE, *sworn:*

Q. What did you see, sir, of this?

A. Well, sir, I saw when they first came in; myself and young ladies were sitting in the passenger-room, and these two young men came in and bid the time of night, and said it was pretty warm, and I said yes, and this policeman was standing outside of the window, and Mallon came over to the young ladies and said: "Where did you get her?" and I said she was a friend of mine, and then the car was going to start, and I was going to put them into the car, and the policeman came up and said to Mallon that he had better let the young ladies alone. While I was putting the young ladies into the car the man got struck, and I did not see the man strike him.

Q. Did they say anything to the ladies at all?

A. No, sir.

Q. They asked you where you got them?

A. Yes, sir.

Q. Did you say where you got them?

A. No, sir; I did not.

Q. They said no more?

A. No., sir.

CHARLES SCHOLFIELD, *sworn:*

Q. Well, sir, what do you know of this?

A. Well, all that I can say about it is that I saw the shadow of the officer fall, and I saw two men running.

Q. Could you identify either one of the two.

A. No, sir,

FRANCIS MALLON, *sworn in his own behalf:*

Q. What do you do for a living?

A. I am a horse-shoer; I work over the bridge in Mott Haven; I did not strike the officer; never was arrested before.

JOHN FITZPATRICK, *sworn:*

Q. Did you strike the officer?

A, No, sir.

Q. Did you ever strike him?

A. No, sir; never was arrested before; I am a horse-shoer.

HUGH FARRELL, *sworn:*

Q. Do you know Fitzpatrick and Mallon?   ·   .

A. Yes, sir; I do know them by seeing them; I have known them five or six years.

On this testimony prisoners were found guilty. After conviction, they were sent to jail upon the following commitment:

> At a court of special sessions of the peace, holden in and for the city and county of New York, at the halls of justice of the said city, on Saturday, the 29th day of January, in the year of our Lord, one thousand eight hundred and seventy.

Present—the Honorable JOSEPH DOWLING and BUTLER H. BIXBY, Police Justices, elected respectively in the Second and Sixth judicial distr icts of said city and county, justices of the said court.

THE PEOPLE agt. FRANCIS MALLON and JOHN FITZPATRICK.

On conviction, by the oath of a credible witness, of the misdemeanor of assault and battery, on Charles Miner, committed in said city, January 23, 1870, after having duly elected to be tried by said court, and after having been duly arraigned and duly charged upon the said misdemeanor, and having duly answered the same :

Whereupon it is ordered and adjudged by the court, that

the said Francis Mallon and John Fitzpatrick, for the misdemeanor aforesaid, whereof they are convicted, be imprisoned in the penitentiary of the city of New York for the term of six months.

A true extract from the minutes.

ROBERT H. JOHNSTON, *Clerk.*

This court thereupon issued its several writs to bring up the prisoners, and on the 3d March, 1870, the prisoners were produced.

Messrs. FLANNIGAN & GROSS appearing, urged their discharge upon two grounds:

*First.* That the prisoners should have been tried by a jury, as they demanded.

*Second,* That the court of special sessions, as then organized, had no power to try them.

Counsel for the prisoners then offered as a traverse to the return of the clerk of special sessions, the following affidavits to show its falsity, and rested:

*City and county of New York, ss. :*

John Fitzpatrick, being duly sworn, says that he resides at Fordham, Westchester county, and state of New York, and is now confined in the city prison, serving out a sentence of six months for an alleged assault and battery committed upon one Charles Miner, a police officer in this city, on the night of the 23d day of January, 1870, to wit, on Sunday night or Monday morning, between the hours of 1½ and 2 o'clock, at or near Harlem Bridge. Deponent further says that the charge make against him was and is false; that he did not commit the assault and battery alleged, and that the circumstances under which the charge was made against deponent are as follows: On Sunday night aforesaid, deponent and his friend, Francis Mallon, attended a christening at Mott Haven, Westchester county, and imbibed rather freely in intoxicating drinks, and did not leave until about 1 o'clock, after the last car on the Fordham horse railroad had gone up. Deponent then

thought the journey too far to walk, and crossed over to Harlem to hire a carriage in which to go home. That the night was cold, and deponent and Mallon went into the passenger depot of the Third Avenue railroad, to warm themselves, before starting. While there a young man, accompanied by two young women, addressed deponent by name; the complainant, officer Miner, opened the door and looked in, and one of the young women said jocosely to the officer, " I wish you'd arrest this man." All hands then left, and deponent, after failing to procure a carriage, walked his way home, and afterwards, as deponent learned, the officer was hit in the face by some person unknown to him, and accused deponent and Mallon of having done it; deponent was arrested on the 24th day of January, 1870, at his place of business in Fordham, by two detectives from Harlem, without, as he believes, having the warrant required by law for his arrest, who took him to Justice McQuade's court at Harlem, and he sent deponent's case to the court of special sessions for trial, which was reached on the 29th day of January, 1870 ; deponent demanded a trial by jury on that day, which was refused to him; he was found guilty, in company with Mallon, and sentenced to six months' imprisonment on Blackwell's Island, although, as deponent has already said, he never committed the assault and battery for which they were found guilty, nor does he know who did.                    JOHN FITZPATRICK.

Sworn to before me, this 14th }
   day of March, 1870.            }

                PETER L. FEIRTY,
                 *Commissioner* of *deeds*.


*City and county of New York, ss. :*

  FRANCIS MALLON, being duly sworn, says that he resides at Mott Haven, Westchester county, and is engaged in business therein on his own account as blacksmith; that he is now confined in the city prison serving out a sentence of

six months, imposed upon him by the court of special sessions, for an alleged offense, to wit, for an assault and battery alleged to have been committed on one Charles Miner, a police officer, at or near Harlem bridge, on the night of Sunday, the 23d day of January, 1870, between the hours of half-past one and two o'clock; that the charge made against deponent by the police officer is absolutely and entirely false; that deponent never committed, or attempted to commit the offense charged against him, but that, if any such assault and battery was committed, it was by some person other than deponent; that the circumstances under which deponent was accused of the offense are as follows: One John Fitzpatrick, now in prison with deponent, and this deponent, both being single men, attended a christening in Mott Haven, on the 23d day of January, 1870, to wit, Sunday evening. Both drank some liquor there, and remained in the house until after the last car went to Fordham, where Fitzpatrick resides and works. Fitzpatrick formerly worked for deponent, and as deponent resided near the bridge, in Mott Haven, he crossed over to put him in a carriage and send him safely home, as the journey was a long one to walk at that late hour of the night, from Mott Haven to Fordham. After crossing the bridge to Harlem, deponent and Fitzpatrick felt rather cold, and went into the Third Avenue passenger depot to warm themselves. While there he saw a young man and two women, one of whom recognized Fitzpatrick. The officer, (Charles Miner, the complainant,) opened the door, looked in, and one of the women said jocosely to him, "I wish you'd arrest this man." All hands left, and deponent and Fitzpatrick looked for a carriage, but couldn't find one, and then both deponent and Fitzpatrick crossed over the Harlem bridge home. The officer used violent and insulting language to Fitzpatrick; was afterwards hit by some person, and accused deponent and Fitzpatrick of having done it. Deponent was arrested at his shop next morning

by a police officer from Harlem, in Mott Haven; taken before Justice McQUADE at Harlem police court, and sent by him to the court of special sessions for trial. His trial was reached on the 29th day of January, 1870; he demanded a trial by jury, which was refused, and then and there was found guilty of the charge, although being entirely innocent of it as aforesaid, and was, thereupon, sentenced to six months' imprisonment in the penitentiary at Blackwell's Island.                                                   FRANCIS MALLON.

Sworn to before me, this 14th }
    day of March, 1870.           }

PETER L. FEIRTY,
*Commissioner of deeds.*

*City and county of New York, ss.:*

PETER GALLAGHER, being duly sworn, says that he is a resident of Mott Haven, Westchester county, and was present when the above named Francis Mallon was arrested on Sunday evening. That the facts of the arrest are as follows: Deponent, who is a car-driver on the Second Avenue railroad in this city, was returning home from work about half-past one o'clock, a.m., and when about crossing the bridge, he heard the rap of a policeman's club, and turned back and found a policeman sitting on a stoop, near one hundred and twenty-ninth street, covered with mud, with another policeman standing by, whom deponent heard ask the first what injured him? He replied that he slipped and fell off the front of the car and hurted himself. Deponent remained in that place about ten minutes, and then crossed the Third Avenue bridge over Harlem river on his way home. After crossing, he met said Francis Mallon near his (Mallon's) residence, and told him about the affray, and asked him to walk up the street and see if the policeman who had gone ahead had arrested any one. He consented, and with this deponent walked up the Boston road, about a quarter of a mile further, when they

met two New York policemen returning, who arrested Mallon for assaulting the officer, and took him from Westchester county, where they then were, to the twelfth precinct in Harlem.

Deponent further says, that he was present in the court of special sessions at the time the said prisoners were committed by Justice DOWLING; that he was ready to testify as a witness on behalf of the prisoners, but was not called. That no testimony was taken before said justice at that time against said prisoners.     PETER GALLAGHER.

Sworn to before me, this 15th }
    day of March, 1870.     }

EDWARD J. FENNELL,
*Commissioner of deeds.*

The learned district attorney (Mr. Blunt,) contended that the prisoners should not be discharged, because the clerk's return showed that the prisoners elected to be tried at special sessions, and that such return was conclusive in itself. He also offered an able argument in favor of the legality of the court as then constituted.

McCUNN, J.—In this case the prisoners were convicted by police Justices DOWLING and BIXBY, sitting as judges of the special sessions, of an assault and battery upon a policeman, and were sentenced to the penitentiary on the 29th day of January, to terms of six months each.

They are now brought before me on *habeas corpus*, and their discharge demanded upon two grounds.

*First.* That the prisoners, under section eighteen, article six of the state constitution, had a right to be tried by a jury; that they were illegally debarred of that right, although they demanded so to be tried, consequently their conviction and sentence by the police magistrates are void.

*Second.* That by the act in regard to the special sessions, passed 1865, the police justices (DOWLING of the second

and KELLY of the sixth judicial district,) who tried the prisoners were, by the very terms of the act enabling them to hold said court of special sessions, debarred from doing so, because their terms of office having expired on the last day of December, 1869, they ceased to be the judges of said court of special sessions after the 1st of January, 1870, and that other police justices—the justices elected for said districts—could not lawfully hold said court.

As to the first ground urged, the court of special sessions is a court of limited jurisdiction, is an inferior tribunal, has no jurisdiction but what is given by statute, its record or minutes must show affirmatively that it has jurisdiction, and no presumption will be indulged in favor or support of·such jurisdiction—herein differing from a superior court of common law powers, whose jurisdiction is intended until the contrary appears. In this case, before the court of special sessions could acquire or assume jurisdiction, and try the prisoners, and for the purpose of conferring such jurisdiction, it must appear positively that the right of trial by jury was expressly waived by the prisoners, and that they preferred and demanded to be tried by the court of special sessions, and this not appearing in the papers certified to me, by the clerk of the court, the whole proceedings, in consequence thereof, are null and void. I have taken the trouble to examine all the minutes and proceedings had before the committing magistrate, also all the proceedings had before the special sessions, taken by a stenographer at the trial, and cannot find anything contained therein tending in the slightest degree to show that the prisoners in any sense waived their constitutional right to be tried by a jury of their country ; nor can the defect in the trial remedied by the clerk of the court of special sessions inserting in the minutes, after the trial, the words " that after having been duly elected to be tried by said court." As I have said before, to enable the court to acquire jurisdiction, it must appear affirmatively, in the pro-

ceedings had before trial, that the prisoners expressly waived their right to a jury. It will not do to ask the prisoner if he elects to be tried by the court of special sessions, because he may think, and reasonably think so, that that court exercises the right of trial by jury, and thereby be misled, but the question must be clearly put to him if he waives a trial by jury; and, after answering "yes" or "no," that fact must appear clearly and affimatively.

But, even if the papers before me had shown (which they do not) that the question had been put to said prisoners as to whether they had waived a jury or not, then the court of special sessions, not being a court of record, the prisoners had a right to traverse such a return and show its falsity.

This is the doctrine held by Chief Justice BRONSON, in the case in (5 *Hill*, 164.) In that case that most learned judge said : " But the officer may inquire whether in truth there is any process of commitment, and whether it is valid on its face. * * * And he may also inquire whether the magistrate had jurisdiction, and this, too, notwithstanding the commitment recites the necessary facts to give jurisdiction." Again, in same case, he says: "No court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends." Precisely this case. Here the defendants allege that the clerk of the committing magistrate made a false return in stating that the prisoners elected to be tried by the special sessions instead of by a jury, and in support of the fact that a false return was made they produced three affidavits, stating positively that they demanded a trial by jury, and this fact is not denied. Under these circumstances, it is impossible to sustain these convictions. (8 *How.*, 428; 3 *Hill*, 666, *note p.*, 39 ; 2 *Park. Cr. R.*, 650 ; 5 *Abb.*, 281; 15 *How.*, 210 ; 26 *Barb.*, 28.)

As to the second ground urged why I should set aside

these sentences, after a hasty glance at the act of 1865, I can readily conceive how the point might be well taken, but as the first ground is sufficient for the release of the prisoners, I pass for the present its consideration.

The crime with which these men were charged was so trifling in itself that it seemed to me not to merit such severe punishment.

The defendants were master blacksmiths and horse-shoers, doing business in Westchester county, and had at all times borne a good character. They were under the influence of liquor at the time of the alleged occurrence, and if they did assault the officer, of which there is not a syllable of proof, the assault did not result in any injury, the punishment inflicted was entirely too severe; a few days in the city prison would have been quite adequate; the six months of hard labor in the penitentiary meted out to them should have been reserved for other and greater criminals.