Mr. Justice DANIEL
 

 delivered the opinion of the court
 

 The original bill in this case having been framed upon a palpable misapprehension of the position of the parties, and of the facts connected with and entering into their rights or their obligations, reference to that bill beyond this remark is deemed unnecessary. The object of the amended bill filed by the complainants on behalf of themselves and others, creditors of the mercantile houses of Luke Tiernan and Charles' Tiernan of Baltimore, and of Tiernan, Cuddy, & Co-., of New Orleans, is to procure an appropriation to those creditors of the sum of $ 15,000, remaining in the hands of the defendant Alexander Neill, and derived to him from Charles H. Carroll, the trustee in the deed from Luke Tiernan, filed as an exhibit with the answer of Neill in this cause. This controversy depends, first, upon the construction of those clauses, of the deed above mentioned, which direct the payment by the trustee to Alexander Neill, and the application by the latter of the sum so paid, and, secondly, upon the operation of the rules of law, as controlling such application in reference to the rights of the separate creditors of Luke Tiernan, and of the joint creditors of the firms of Luke <fc Charles Tiernan, and of Tiernan, Cuddy, & Co.
 

 In other words, whether the separate creditors of Luke Tier-nan have a prior right of satisfaction from the subject of the trust constituting the separate private estate of said Tiernan, or have the right to claim against that separate estate
 
 pari passu
 
 only with the several creditors of the mercantile houses of which Luke Tiernan was a partner. The facts of this case are few and simple, and are scarcely in any respect controverted; the cause turns: as has already been remarked, upon the construction of the deed, and upon the rules of equity as applicable to the position of the grantor, in relation to the different classes of his creditors, at the period of its execution. The language of the deed, as indicative of the intention of the grantor, will in the first place be adverted to. And in considering this language, it may be remarked, that it nowhere speaks of debts due from Luke Tiernan, as a member of the firms of Luke & Charles Tiernan, or of Tiernan, Cuddy, & Co., nor mentions
 
 *422
 
 nor alludes to those firms, nor to any other mercantile firms whatsoever. This deed recites the facts of the relinquishment by Mrs. Tiernan of her dower right in a large amount of property previously sold by her husband, and of her consent to a similar relinquishment in future sales to be made by the trustee, Carroll; it recites also a debt due from the grantor to Mrs. Anne E. Brien, deceased, which was still unpaid, and- was due and owing to her son, Luke Tiernan Brien. It then proceeds to declare, — “ That whereas the said Luke Tiernan is indebted to divers other persons, residing in different parts of the United States, in a large sum of money in the aggregate, but the names of all the persons to whom he is indebted, and the amounts due to each respectively, the said Luke Tiernan is now unable to specify particularly. And whereas the said Luke Tiernan is desirous of conveying the lands hereinafter described, in trust that the same shall be sold, and the proceeds thereof applied in the manner hereinafter particularly specified.” The deed then, after directing a sale by the trustee, provides, that he shall remit from time to time, as the same shall be received,
 
 “
 
 to Alexander Neill of Maryland, and payable to his order, of the first moneys arising from such sales, until he shall have remitted the sum of $ 15,000, to be paid by the said Alexander Neill to the creditors of the said Luke Tiernan whose demands shall then have been ascertained; and if the demands so ascertained shall exceed the said sum of $ 15,000, the same shall be applied in part payment of each of the said demands, in the ratio that each of said demands shall respectively bear to the whole sum $ 15,000, so to be applied.” The deed then provides, out of further remittances arising from sales to be made by the trustee, for the payment of $> 12,000 to Mrs. Tiernan, in-compensation-for her right of dower; and next, for the payment of the debt due to the son of Mrs. Anne E. Brien, and then declares,'that after the last-mentioned sum (i. e. the sum due to Mrs. Brien or to her son) shall have been paid, all the moneys arising from such sales (after deducting expenses, &c.) shall be remitted by the trustee to the said Neill, and the same shall be applied by the said Neill to the payment of the debts due from the said Luke Tiernan
 
 to all
 
 the creditors of the said Luke, whose demands shall then have been ascertained by the said Alexander Neill ; “ and in case that the sum so to be applied shall be insufficient for the payment of all such demands; then, and in this case, the same shall be applied in part payment of each of said demands, in the ratio that each of said demands respectively shall bear to the whole sum to be so applied to that object; and in case the said sum shall be more than equal to the payment of
 
 *423
 
 such demands, then, and in that case, the residue thereof shall be paid by the said Alexander Neill to the said Luke Tiernan, his heirs,” &c.
 

 We have already adverted to the circumstance, that the grantor in ibis deed has nowhere alluded to any mercantile concern with which he was associated) that he was disposing of a subject confessedly his own separate property; that he has not said, that'whereas Luke Tiernan &. Son, or Tiernan, Cuddy, & Co., but that Luke Tiernan, was indebted to Mrs. Tiernan and to Mrs. Brien, and to divers other persons residing in different quarters of the country. This would not be the language of a merchant, (still less of a practised and extensive merchant,) when intending to designate the firm of which he makes a part. On such occasions he never mentions himself -individually, unless he. intends expressly to distinguish between himself and his house, and would always be so understood by established mercantile acceptation. And again, if, in the construction of this deed, the name of Luke Tiernan is to be taken as synonymous with Luke Tiernan & Son, and Tier-nan, Cuddy, & Co., we should be driven to the conclusion, that these several firms were indebted to Mrs. Tiernan in consideration of her relinquishment of her dower in her husband’s estaté, and to Mrs. Brien for the private debt due to her, — for all these creditors are grouped in the same category. Their claims originate in the same source, — in the obligations of Luke Tiernan. The language of the deed is, that
 
 Luke Tiernan
 
 is indebted to Mrs. Tiernan, and to Mrs. Brien; and the same Luke Tiernan it is who is also indebted to divers other persons residing in different parts of the United States. Such a construction of the deed involves, we think, a violation of the plain meaning of the terms of the instruhaent, and leads to confusion and absurdity.
 

 It has been-insisted for the appellants in this case, that the admission by the grantor of a large amount of drums against him, of the diversity of the residence of his creditors, and of the inability on his part at once to designate those*creditors and their demands, should be received as proof that the deed was never intended to be limited to the private creditors of the grantor, who, it is contended, must, as well as the e: .tent of their claims, have been known; but was designed to embrace all his partnership liabilities. We have just stated that such an interpretation of the deed is inconsistent with the meaning of its language. But if we look beyond the deed, to the position of the, parties at the time of its execution, is there any probability arising from that position, which can justify the conclu
 
 *424
 
 sions urged in this respect for the appellants? The grantor in this deed appears to have been at one time' the possessor of great wealth; the deed made an exhibit in this case shows that he was the possessor of an unusual extent of property. It is almost certain, too, from the character and situation of the subject of this conveyance, as well as from other circumstances disclosed by the record, that its owner must have been the proprietor of many other constituents of a large estate, both within and without the city and State of his residence. That a man thus situated should necessarily be engaged in a variety of transactions; should employ numerous agents; that many of his transactions, both as to persons and contracts, should be conducted by agents; that his knowledge with respect to persons and undertakings should in their detail be dependent on information to be derived from agents thus employed, — are circumstances, in our view, falling’ within the range of daily experience, and such as not only may explain the language of an instrument intended to embrace the transactions of one so situated, but which in fact render such language proper, in order to bring it within the bounds of experience and truth. The daily habits of one so situated must imply, to some extent, an ignorance of the precise detail of all that may be consequent upon them. We think it natural, (nay, with a due regard to truth, inevitable,) that one so situated, if called upon on an emergency, should admit his inability to enumerate all that he had done, — all that he had authorized to be done through others, — and every consequence which might flow from the one or the other. The language of Mr.Tiernan we consider, therefore, as not more comprehensive than was appropriate to embrace his private liabilities. The debts due to his wife and to Mrs. Brien were strictly domestic obligations, necessarily within his knowledge; were regarded as of a peculiarly sacred character; and therefore were provided for, exempt from the contingency of an ultimate insufficiency of funds. But even these claims, however sacred they may have been deemed, were not permitted absolutely to precede a contribution at least to other creditors whose condition might be known; but they have been postponed to these
 
 pro tanto.
 
 The language of that portion of the deed which, after the payment directed to be madé to Mrs. Tiernan and to Luke Tiernan Brien, and after distribution of the first fifteen thousand dollars received from the trustee, directs the' application of the subsequent proceeds of the trust subject to all the creditors of the grantor then ascertained, and, in the event of a surplus, the payment of that surplus to the grantor, has been earnestly pressed on our attention. It has been argued upon
 
 *425
 
 this provisión of the deed, either that it is expressive of the intention of Lnke Tiernan to let in all his creditors, social as well as individual, or that it is fraudulent, as interposing a hindrance on one or the other class, or on both the classes of his creditors, by an attempt to retain the proceeds of the land, in opposition to their rights. We cannot yield to this argument the ends it was designed to accomplish. We think that the terms of this latter provision, so far from enlarging the meaning of the former, so as to let in _ upon the trust subject the creditors of the firms before mentioned, tend rather to strengthen the limit presented by the former provision when standing alone. For although the distribution of the money to be received by Neill is to be made amongst
 
 all
 
 the creditors, they are still the creditors of the said Luke Tiernan before spoken of, and the creditors of no other person. This mode of expression, coming from an individual practised in the habits and language of merchants, we regard as a confirmation of the intention previously expressed, rather-than as proof of a departure from that intention. Next, as to any evidence of fraud resulting from the direction to pay Over to the grantor in the deed any surplus which might remain after satisfying the separate creditors; we can perceive no • proof of fraud, no attempt to hinder or delay the creditors in this direction. Nothing is more probable than that Luke Tiernan might have considered the effects of Luke Tiernan' & Son and of Tiernan, Cuddy, & Co., represented to be of a large amount, as ade.quate to meet the joint responsibilities of those firms; or, at any rate, he might have insisted-upon his right to refer the partnership creditors to the partnership funds in the first instance, and, until these should be shown to be insufficient, to retain possession of his separate private estate. The argument then appears to be defective in either aspect in which it is applied.
 

 The second principal position assumed for the appellant is this; that, conceding the fifteen thousand dollars in controversy to have been ever so clearly appropriated by Luke Tiernan to his separate creditors, still, under principles of equity/ such an appropriation cannot be maintained; but that those principles authorize the partnership creditors of Tiernan & Son, and of Tiernan, Cuddy, &. Co., to charge that fund
 
 pari passu
 
 with the separate creditors of said Tiernan.
 

 The rule in equity governing the administration of insolvent partnerships is one of familiar acceptation and practice; it is one which will be found to have been in practice in this country from the beginning of our judicial history, and to have been generally, if not universally, 'received. This rule,
 
 *426
 
 with one or two eccentric variations in the English practice which may be noted hereafter, is believed to be identical with that prevailing in England, and is this: — That partnership creditors shall in the first instance be satisfied from the partnership estate; and separate or private creditors of the individual partners from the separate and private estate of the partners with whom they have made private and individual
 
 contracts;
 
 and that the private and individual property of the partners shall not be applied in extinguishment of partnership debts, until the separate and individual creditors of the respective partners shall be paid. The reason and foundation of this rule, or its equality and fairness, the court is not called on to justify. Were these less obvious than they are, it were enough to show the early adoption and general prevalence of this rule, to stay the hand of innovation at this day; at least, under any motive less strong than the most urgent propriety.
 

 This rule may bé traced back in England, with certainty, to the cases of Ex parte Crowder, in 2 Vernon, 706, (in 1715,) and of Ex parte Cook, 2 P. Wms. 500, (in 1728,) nearly a century and a half since. It was affirmed by Lord Hardwicke in Ex parte Hunter, in 1 Atkyns, 228, (in 1742,) and continued unchanged until the year 1785, when a material innovation was riiade upon it by Lord Thurlow, in the case of Ex parte Hodgson, 2 Bro. Ch. Hep. 5. By the decision last mentioned, the established practice then of sixty years was so changed, and the distinction between joint and separate creditors so broken up, that the former were permitted to come in, and to receive dividends
 
 pari passu
 
 with the latter, from the separate estate.
 

 This change led to the practice of filing a bill on behalf of the separate creditors, to restrain the order in bankruptcy whenever there was a' joint estate, and by this means the rights of the joint and separate creditors on their respective funds were maintained: a proceeding which could rest on no other foundation, than the peculiar equities of these different parties with respect to the funds with which they had been respectively connected. In consequence of the inconvenience of Lord Thurlow’s rule, and of the injustice it was thought to involve, Lord Loughborough reestablished the practice that had so long previously existed, with the single modification of permitting the joint creditors to prove under a separate commission; but denying to them any right to dividends, until after the separate creditors'^. re satisfied. The reasoning of his Lordship, as going to . w ■ nat his decision is founded in pure principles of equity, is -ihiarly forcible. Speaking of the rule of Lord Thurlow, he says, — “ The difficulty that has struck me upon
 
 *427
 
 it is, that what I order here sitting in bankruptcy, I shall forbid to-morrow sitting in chancery ; for it is quite
 
 of course
 
 to stop the dividend upon a bill filed. The plain rule of distribution is, that each estate shall bear its own debts. The equity is so plain, that it is of course upon a bill filed. The object of the commission is to distribute the effects with the least expense. Every order I make to prove a joint debt on a. separate estate, must produce a bill in equity. It is not fundamentally a
 
 just
 
 distribution, nor a convenient distribution. Every creditor of the partnership would come upon the separate estate. The consequence would be, the assignees of the separate estate must file a bill to restrain the dividend upon all these proofs, and make the partners parties. But there is another circumstance. It is a contrivance to throw this upon the separate estate.” Again his Loi’dship says, —
 
 “
 
 It is not stated as a case where there are no joint funds. Here it is only that there are two funds. Their proper fund is the joint estate, and they must get all they can from that first. I have no difficulty in ordering them to be permitted to prove; but not to receive a dividend.” This doctrine of Lord Loughborough, deduced, as he tells us, not less from fundamental principles of equity, than from convenience in the administration of bankrupts’ estates, appears to have been followed in England ever since. The numerous cases chiefly before Lord Eldon going to sustain this position, would, if quoted, unnecessarily encumber our opinion; they are collected in note 1 to the case of Elton ex parte, 3 Vesey by Sumner, p. 242. It may be proper in this place to mention the two departures permitted, by the Court of Chancery in England from the general rule pursued by that court, which departures were adverted to in a previous part of this opinion. The first is presented in the instance in which the
 
 petitioning creditor,
 
 though a joint creditor, is permitted to charge the separate effects
 
 pari passu
 
 with the separate creditors, because, as it is said, his petition, being prior in time, is in the nature of an execution in behalf of himself and the separate creditors. The second is that in which there are 'no joint effects at all. In this last instance it is said that the joint creditors may come in for dividends
 
 pari passu
 
 on the separate
 
 effects;
 
 though if there be joint effects, though of the smallest possible amount, this priviledge would not be allowed. These exceptions it seems difficult to’reconcile with the reason or equity on which the general rule is founded; they are but exceptions, however, and cannot impair that rule. They do not, for aught we have seen, appear to have been recognized by the courts of this country. The case of Tucker
 
 v.
 
 Oxley,
 
 5
 
 
 *428
 
 Cranch, 34, was a case at law, and the court in that case, whilst they admitted the joint creditors to prove and to receive dividends against the separate estate, explicitly recognized the authority of Ex parte Elton, and the power and the duty of a court of chancery, upon application thereto, to prevent the diversion of the separate fund. The latter exception above referred to was considered by the Court of Appeals of Maryland, in the case of McCulloh
 
 v.
 
 Dashiell, 1 Harris and Gill’s Reports, 97, and by that court expressly repudiated.
 

 The doctrine upon this question of distribution, as illustrated both in the English and American decisions, will- be found to be ably treated in the case of Murray
 
 v.
 
 Murray, 5 Johnson’s Chancery Reports, 72
 
 et seq.;
 
 and by Archer, Justice, in the case of McCulloh
 
 v.
 
 Dashiell in 1 Harris and Gill, pp. 99 to 107; and the authorities, both English and American, are collated in a learned note in the third volume of Kent’s Commentaries, beginning on'p. 65 of that volume.
 

 The proper conclusion from these authorities we deem to be this, as is stated also by Justice Story in his treatise on Partnership, p. 376, where he says, —“ It is a general rule, that the joint debts are primarily payable out of the joint effects, and are entitled to a preference over separate debts of the bankrupt; and so, in the. converse case, the separate debts are primarily payable out of the separate effects, and possess a like preference; and the surplus, only after satisfying such priorities, can be reached'by the other class of creditors.”
 

 Upon a full consideration of this cause, we are of the opinion that, upon either ground of objection urged to the decree of the Circuit Court, that decree should be affirmed, and it is hereby accordingly affirmed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.