HUDGINS *v*. RIX.

Opinion delivered November 10, 1894.

*Fraud—Purchase of partnership property by partner.*

     A purchase of all of the partnership property by a partner, even though he be a dormant one, is not *per se* fraudulent as to the creditors of the partnership, or as to any one else.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Sanders & Watkins* and *Martin & Murphy* for appellant.

1.  The verdict is not supported by the evidence.

2.  The seventh instruction given for appellee is palpably error.  120 Ill. 403 ; 9 Ark. 92.

*G. G. Latta, Chas. D. Greaves, E. W. Rector, Wood & Henderson* and *L. Leatherman* for appellee.

1.  There is ample evidence to show the transaction fraudulent, even conceding that Hudgins was not a partner of Farris.  It is ample to show that he had an interest in the business.

2.  Instruction No. 7 is not objectionable, for there is proof tending to show that Hudgins was a partner.

BUNN, C. J.  On the first day of June, 1889, the appellant purchased a stock of goods, for the price of $14,101.25, from one R. M. Farris, a shoe merchant doing business in the city of Hot Springs, and paid him therefor in cash $2000, in his notes, which appellant held against him for borrowed money, amounting to $4900, and assumed the payment of $3150 owing by Farris to J. W. Hudgins, brother of the appellant, and gave his notes for the balance, $3710, payable in six, nine, twelve and fifteen months.  Thereupon the Sachs Manufacturing Company and fifteen other foreign creditors of R. M. Farris instituted as many several, separate actions of attachment against him upon substantially the same grounds ; that is to say, that the said Farris had sold or disposed of the said goods with the the intent to cheat, hinder and delay his creditors.  To indemnify the sheriff of Garland county and the claimants, the plaintiffs in these several attachment suits made their bonds, in each of which the appellee became surety.  The goods were then seized and sold by the sheriff.  On the 6th day of March, 1890, the appellant instituted this action

against the appellee, as bondsman on these several bonds, for the value of said goods, alleged to have been wrongfully taken from him and sold by virtue of said writs of attachment, and claimed his damages at the sum of $17,260.45, the estimated value of said goods.

The defendant, after motion to strike the complaint from the docket and demurrer thereto overruled, filed his answer, denying the allegations of the complaint, and alleging fraud in the sale of the goods by R. M. Farris to appellant, and that Jack and Harry Hudgins, two brothers of appellant, were partners in the firm of R. M. Farris, sometimes styled by witnesses as "R. M. Farris & Co."

The evidence is conflicting, and this confines the duty of this court mainly to a consideration of the rulings of the court below in the matter of giving and refusing instructions, there not appearing any error in the disposal of the demurrer of defendant to the complaint of plaintiff.

We find no substantial error in the instructions when taken together, except the seventh instruction given by the court below at the request of the defendant. That instruction is in the following language, to-wit: "If the jury believe from the evidence that plaintiff, B. L. Hudgins, at the time of the alleged sale of the stock of goods from R. M. Farris to him, was interested as a partner in the business or stock of goods as transferred, then the said sale or transfer was void as to creditors of said Farris or his said firm, and if you so find, your verdict will be for the defendant." There is some evidence going to show that appellant, B. L. Hudgins, was interested as a partner in said firm of R. M. Farris, or R. M. Farris & Co. How weak or strong that evidence may be, it is not our province to declare. We only say that there is evidence which the jury may have considered as tending to show such a fact. That being the

case, we cannot treat the instruction as altogether immaterial.

We have carefully examined the long list of instructions given and refused, and find not another word or expression any where else than in this one that has the least reference to the interest of appellant as a partner in the concern. There is nothing in the other instructions to explain or qualify it. It stands out boldly and independently, the only direction of the court to the jury as to how they should consider the one isolated subject— the interest of appellant in the business of R. M. Farris, and the consequence to him if it should be found that he was interested as a partner. The jury, in other words, may well have found for the appellant on all the facts suggested in the other instructions, and yet, when they came to consider this one, found for the appellee, as they did. Therefore, the question is, does the said seventh instruction declare the law? We think not. It can not be safely said, as an abstract proposition, that when one partner buys out the stock of the firm, he is not the true owner thereof; or, as is said, in effect, in the instruction under consideration, the jury should find against such partner, at all events, when suing for the value of this same stock converted by another.

The purchase of all the partnership property by one partner, and he a dormant partner even, is not *per se* fraudulent as to the creditors of the partnership, or as to any one else. Such a purchase may be perfectly fair and legitimate. It is only invalid as to creditors when it is made with the intent to defraud them, or so clearly has that effect as that the intent is implied. Whether or not the purchase of the goods was fraudulent should have been a question left to the jury, rather than the simple question whether or not the appellant was interested as a partner. The purchase of a partner, as has been said, may be very innocent, but a fraudulent pur-

chase by a partner of the firm's property is quite another matter.

In *Reynolds* v. *Johnson*, 54 Ark. 452, in speaking on a kindred subject, this court said: "If, before the claim of the creditors is sought to be enforced by the creation of a trust in some mode, the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property, either of one partner or a third person, the equities of this partner are extinguished, and consequently the derivative equities of the creditors are at an end." The language of the court is a quotation from the opinion in the case of *Case* v. *Beauregard*, 99 U. S. 119—an instructive case on this particular subject. So also is *Carver Gin Co.* v. *Bannon*, 85 Tenn. 712, and *National Bank* v. *Sprague*, 20 N. J. Ch. 13, all referred to in *Reynolds* v. *Johnson*. To emphasize its opinion, this court, in the case of *Reynolds* v. *Johnson*, after quoting from Bump on Fraudulent Conveyances where that author announces the contrary doctrine, and after conceding that the weight of authority was for the contrary doctrine, further says : "But the court laid down a different rule upon the question in *Jones* v. *Fletcher*, 42 Ark. 423, adhering to the doctrine of the Supreme Court of the United States" in the case cited.

We think the instruction, for the reason stated, was fatally erroneous.

There are other questions raised, mainly as regards the composition of the jury, but it is unnecessary to express any opinion thereon, as the presumption is indulged that those questions will not arise again.

Reversed and remanded.

WOOD, J., dissenting. The fraud of Farris was egregious and overwhelming ; so much so that appellant does not deny it, but bottoms his claim solely upon the

theory that he was an innocent purchaser for value. That is impossible, under the facts of this record, if Hudgins was a partner with Farris. The court says: "There is some evidence going to show that appellant B. L. Hudgins, was interested as a partner in said firm of R. M. Farris, or R. M. Farris & Co. How weak or strong that evidence may be, it is not our province to declare." The partnership being denied by Hudgins and determined against him by the verdict, fraud upon his part follows as inevitably as the night the day. As a partner, he undoubtedly had the right to purchase the interest of his co-partner, and, as is said in the majority opinion, such a purchase "is only invalid as to creditors when it is made with the intent to defraud them, or so clearly has that effect as that the intent is implied." That is exactly the case here, in the light of appellant's contention and the verdict of the jury. We must treat Hudgins as a partner purchasing the interest of his co-partner, and after this purchase denying liability for the partnership debts. Why, as a partner, active or dormant, Hudgins could not buy out the interest of his co-partner, paying as a consideration the sum of nearly fourteen thousand dollars, and then deny that either the partnership effects were subject to, or that he individually was liable for, the partnership debts, without being guilty of fraud. Yet, that is precisely his attitude, since the jury has found that he was a partner. The consideration for his purchase was a note of four thousand nine hundred dollars, with interest, which Farris owed him and which he surrendered to Farris, and a debt of three thousand one hundred and fifty dollars which Farris owed J. W. Hudgins, his brother, and which appellant assumed, and then executed his notes to Farris for the balance amounting to some three thousand seven hundred and ten dollars. Now, if he was a partner, as the jury determined, could he convert nearly fourteen thou-

sand dollars of partnership assets into individual property without paying a single partnership creditor, and then deny all individual liability, without being guilty of a fraud? I say such conduct would be clearly fraudulent. Bates, Partnership, sec. 559, *et seq.* If Hudgins was solvent, as was insisted in argument, it is but fair to presume that no attachments would have issued had he admitted the partnership instead of denying liability for the partnership debts. But, having denied the partnership and all individual liability, when he was in fact a partner, his conduct clearly evidenced an intent to defraud creditors in making the purchase. The fraud of Farris being palpable and undisputed, the moment the jury determined that Hudgins was his partner at the time of the purchase, *ipso facto* Hudgins' complicity in the fraud became established, if he is to be held to the position which his pleadings, his evidence and the instructions asked show him to have assumed. The law would visit him with all the knowledge that Farris had of the firm's financial condition, and the manner of his purchase, as indicated, being uncontradicted, when taken in connection with his denial of partnership and individual liability, stamped the purchase as fraudulent *per se.*

So in my judgment, with all due deference, to reverse this cause because of the giving of the seventh instruction enables the appellant to reap a benefit from his own misleading and fraudulent conduct, which doubtless superinduced the very condition of which he is now complaining. Abstractly considered, the seventh instruction is not the law. But, in the light of the record before us, I do not think the court erred in giving it, for the reasons stated.