BARTLETT *v.* MEYER–SCHMIDT GROCER COMPANY.

Opinion delivered May 7, 1898.

1.  PARTNERSHIP—PREFERENCE OF INDIVIDUAL CREDITORS.—The equity of the creditors of an insolvent firm to be paid out of the firm assets, in preference to creditors of individual members of the firm, cannot be extinguished by a preference of creditors of the latter class in a general assignment by the firm for the benefit of creditors. (Page 291.)

2. SAME—FRAUD.—A preference by an insolvent firm, in a deed of general assignment, of a debt of a member of the firm is to that extent a withholding of firm assets for the private benefit of one of its members, and is a fraud upon the rights of the firm's creditors.   (Page 294.)

Appeal from Independence Circuit Court in Chancery.

RICHARD H. POWELL, Judge.

*Yancey & Fulkerson,* for appellants.

An insolvent firm may, by assignment, prefer an individual debt of a member thereof to the debts of the firm. 42 Ark. 423; 52 Ark. 556; 54 Ark. 449; 60 Ark. 18; 99 U. S. 119; 64 Miss. 141; 52 Ill. 471; 116 N. C. 499. There was no duress in the signing of the note.   18 Ark. 214; 49 Ark. 70.

*H. S. Coleman* and *J. W. Butler,* for appellees.

Partnership creditors have an equity, superior to that of creditors of individual partners, to have the firm assets applied to the payment of their debts; and although, during the continuation of the partnership, the firm might lawfully transfer firm assets to an individual partner's creditor, yet they will not be permitted to make such a disposition of their property by assignment. Burrill, Assign. 295; 17 Am. & Eng. Enc. Law, 1090; 42 Ark. 455; 99 U. S. 119; 150 U. S. 385; 59 Ark. 577.

WOOD, J. Appellees, who were creditors of the firm of Bartlett & Durham, brought this suit to set aside the provisions of a general assignment made by said firm for the benefit of creditors, with preferences. The court found "that the preferred debt of Mary A. Bartlett was an individual debt of E. C. Bartlett, one of the partners, and that the property assigned was partnership property." This finding is correct. The legal question therefore is, can an insolvent firm, in a general assignment for the benefit of creditors, provide for the payment, out of the firm assets, of creditors of the individual members of the firm, in preference to creditors of the firm?

1. When one makes an assignment for the benefit of creditors, he brings the assets included therein under the control of a court of chancery. If the assignment is valid, the court must administer the assets, through the assignee, accord-

ing to its provisions.    If, for any cause, the assignment be void, then the property embraced therein is administered for the benefit of all the creditors *pro rata*, as under the provisions of a general assignment without preferences.    Acts of 1895, p. 162. Therefore, if the provisions of the assignment contravene well established principles of equity, a court of chancery will not enforce them, but will proceed to dispose of and distribute the property for the benefit of all the creditors, *pro rata*, who in equity are justly entitled to same.

"It was," says Judge Kent, "a principle of the Roman law, and it has been acknowledged in the equity jurisprudence of Spain, England and the United States, that *partnership debts must be paid out of the partnership estate, and private and separate debts out of the private and separate estate of the individual partner.*"    "The basis of the general rule is that the funds are to be liable on which the credit is given."    3 Kent, Comm. * 65.

In *Bulger* v. *Rosa*, 119 N. Y. 465, the court say:    "There can be no controversy as to the rule of law governing the relations between an insolvent firm and its creditors and their mutual rights in respect of the firm property.    The partnership, as such, has its own property and its own creditors, as distinct from the individual property of its members and their individual creditors.    The firm creditors are preferentially entitled to be paid out of the firm assets.    Whatever may be the true foundation of the equity, it is now an undisputed element in the security of the firm creditors."

In *Hollins* v. *Brierfield Coal & Iron Company*, 150 U. S. 385, the court, through Judge Brewer, said: "Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of the funds in preference to individual creditors, as well as superior to any claims of the partners themselves."    This is an old and firmly established doctrine of equity, recognized generally in the works on Partnership and Equity Jurisprudence, and in the adjudications of many courts.    Story, Part. § 376; Pars. Part. § 246, 382, *et seq.*; Collyer, Part. § 920; Smith, Prin. Eq. § 547 (2);

2 Lindley, Part. § 692; 2 Bates, Part. § 825; 2 Pom. Eq. Jur. § 1046; Story, Eq. Jur. §§ 1207, 1253; 2 Beach, Mod. Eq. Jur. 788; Bisp. Eq. Prin. § 515; *Inbusch* v. *Farwell*, 1 Black (U. S.), 566; *Murrill* v. *Neill*, 8 How. 414; *Crooker* v. *Crooker*, 52 Me. 267; *Treadwell* v. *Brown*, 41 N. H. 12; *Fall River Whaling Co.* v. *Borden*, 10 Cush. 458; *Hill* v. *Beach*, 12 N. J. Eq. 31; *Simmons* v. *Tongue*, 3 Bland, 356; *Converse* v. *McKee*, 14 Tex. 20; *Murray* v. *Murray*, 5 Johns. Ch. 72 *et seq.; McCulloh* v. *Dashiell*, 1 Har. & G. 99; *Giovanni* v. *Bank*, 55 Ala. 310; *Davis* v. *Howell*, 33 N. J. Eq. 72; *Ex parte Crowder*, 2 Vernon, 706; *Ex parte Cook*, 2 P. Wms. 500; *Ex parte Hunter*, 1 Atk. 223, 327, 328; *Ex parte Elton*, 3 Vesey, 242, note; Bishop, Insolv. Debt. § 167.

It would unnecessarily incumber this opinion to trace the history and reason of this doctrine of equity from its origin, through various fluctuations, and to its final establishment in England, whence it came to this country. This has been exhaustively and ably done in *Murray* v. *Murray*, *McCulloh* v. *Dashiell*, and *Murrill* v. *Neill*, *supra*, and in a learned note beginning on star page 265 of vol. 3 Kent's Com., to which we refer any who may have the interest, curiosity and patience to pursue the subject. It is enough for us to know that the rule exists, and that, upon the whole, it is reasonable, convenient, and just. But it is contended that the rule cannot be enforced here, for the reason that the equities of the individual members of the firm, whence this equity of the firm creditors is derived, has been extinguished by the assignment, to which each member of the firm assented; and the following cases are cited to support this contention: *Jones* v. *Fletcher*, 42 Ark. 423; *Feucht* v. *Evans*, 52 Ark. 556; *Reynolds* v. *Johnson*, 54 Ark. 449; *Hudgins* v. *Rix*, 60 Ark. 18.

We are aware that the court is committed to the doctrine, announced in some of these cases, that the equity of partnership creditors can only be worked out through the equity of the partners. But we have never held that the equity of the partners, and hence the derivative equity of firm creditors, was or could be extinguished by an assignment made by an insolvent firm for the benefit of creditors. In none of the above cases was an assignment for the benefit of creditors involved. That makes the difference, and it is marked. *Case* v. *Beaure-*

*gard*, 99 U. S. 119, quoted from and cited as a leading case in the Arkansas decisions, *supra*, is strong authority for the position that the equity of firm creditors would be enforced in case of an assignment; for, says the court in that case, speaking of of the enforcement of this equity: "It is indispensable, however, to such relief, when the creditors are, as in the present case, simple contract creditors, that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm *or by an assignment, or* by the creation of a trust in some mode,"— precisely what has been done in this case.    In *Giovanni* v. *Bank*, 55 Ala. at p. 310, it is said: "When the partnership property is drawn within the jurisdiction of a court of equity, that court regards it as a trust fund for the payment of partnership debts, and subrogates the partnership creditors to the rights of the partners *inter sese.*"  "Courts regard partnership property, after an insolvency or dissolution of the firm, and in the proceeding for winding up its affairs, as a trust fund for the benefit of the firm creditors."    2 Pom. Eq. Jur. § 1046, and authorities cited.

Under our statute a general assignment by a firm for the benefit of creditors, although its provisions as to preferences cannot be enforced, nevertheless operates as a winding up of the partnership business, and is, in effect, a dissolution of the partnership, and a calling upon the chancery court to administer its assets according to equitable rules.    2 Bates, Part. § 483; *Allen* v. *Woonsocket Co.*, 11 R. I. 288; *Simmons* v. *Curtis*, 41 Me. 373; *Wells* v. *Ellis*, 68 Cal. 243; *McKelvy's Appeal*, 72 Pa. St. 409.    Such a conveyance neither creates nor destroys equities.    These are left as they were when the assignment was made.    The very fact of the assignment is a declaration by the firm that its business career has closed, and the law is invoked to wind up its affairs.    Before, the firm has been acting for itself.    Now, what it does is for the benefit of creditors, and it is not authorized, as a firm, to benefit any but its own creditors.    The above is the rule which a court of equity would enforce in an assignment for the benefit of creditors, simply because it is a rule of equity, and regardless of any actual or intentional fraud.

2.    But such an assignment as this must be held as

actually and intentionally fraudulent. It contravenes our statute concerning fraudulent conveyances. Sand. & H. Dig., §§ 3471–2. It purports to be an assignment by a firm for the benefit of creditors, but it is in fact an assignment for the benefit of one of the individual members of the firm. It directs that the firm assets shall pay the individual debts of one of its members. This is equivalent to a gift to him or his creditor, and is to that extent a withholding of firm assets for the private benefit of one of its members, and, of course, hinders, delays and defrauds firm creditors. From these facts an intent to defraud creditors will be conclusively presumed. Such is the law in New York and other states where statutes against fraudulent conveyances like our own were modeled after the 13th of Elizabeth. The doctrine has our unqualified approval. *Kirby* v. *Shoonmaker*, 3 Barb. Ch. 46; *Wilson* v. *Robertson*, 21 N. Y. 592; and other cases cited in Burrill on Assignments, p. 236.

Affirm the decree.