## BOYD *v*. ARNOLD.

### Opinion delivered April 1, 1912.

1. BANKRUPTCY—ACTION TO CANCEL FRAUDULENT CONVEYANCE—LIM-
ITATION.—While a trustee in bankruptcy can not sue to set aside a pref-
erence given more than four months before the petition in bankruptcy
was filed, the four months' limitation does not apply to an action to
cancel a fraudulent conveyance made by the bankrupt. (Page 107.)

2. CREDITORS' SUIT—LIEN.—General creditors, by filing a bill to cancel
a fraudulent conveyance of their debtor, acquire a specific lien on the
property conveyed, and gain thereby a priority in the distribution of
the fund recovered. (Page 107.)

3. BANKRUPTCY—PRIOR LIENS.—A trustee's suit does not displace a
lien acquired by creditors in a suit begun more than four months
before the filing of the petition in bankruptcy. (Page 107.)

4. APPEAL AND ERROR—FAILURE TO APPEAL—EFFECT.—A plaintiff who
did not appeal from a decree in favor of another plaintiff cannot com-
plain thereof on appeal. (Page 108.)

5. PARTNERSHIP—SUBROGATION TO PARTNER'S EQUITY.—The equity of
partnership creditors to have the partnership property applied to their
debts can be enforced only through subrogation to the like equity of
the partners; and where a partner has transferred or relinquished his
interest, the equity of the creditors is gone. (Page 108.)

6. SAME—FIRM DEBTS—LIABILITY OF FIRM PROPERTY.—Where a part-
ner consented that firm property be sold to pay individual debts
of a co-partner, he can not withdraw such consent after the property
is sold, so as to enable firm creditors to reach the property. (Page
108.)

Appeal from Clay Chancery Court; *Edward D. Robertson,*
Chancellor; reversed.

*F. G. Taylor,* for appellant.

The transfer of the note to appellant was in due course of
business without any knowledge on his part of any defect therein
or insolvency of the firm of Bowen & Boyd. He is an innocent
purchaser for value. 65 Ark. 204.

If it be contended that the transfer of the note by G. W.
Boyd to appellant was a fraud, there is no circumstance of fraud
shown aside from the bare fact that Boyd transferred to his
father, and the burden of proof of fraud is on appellees. As
to fraud in matters of bankruptcy, see 152 Fed. 943; 176
Fed. 585.

A firm has the right to sell, mortgage or assign all the assets

of the firm for the purpose of securing or paying the debts owing by them individually, especially so where the individual debt is for money borrowed that went to make up the assets of the firm. 29 L. R. A. 681, and cases cited.

*G. B. Oliver*, for appellant.

1. The testimony shows that Bowen & Boyd were insolvent at the time of the sale of the property and the transfer of the note; that the transferred property constituted the entire assets of the firm; that appellant's debt was an individual debt against his son, one of the partners in the firm; that Bowen did not know that his partner was using his note to pay an individual debt, and did not assent thereto but preferred the note to be used in payment of firm debts. This case therefore falls within the rule laid down in *Bartlett* v. *Meyer-Schmidt Gro. Co.*, 65 Ark. 290.

2. This suit was filed after the transfer of the stock of goods and note, and by intervention the trustee is vested w th all the right of action of the creditors that they had when the suit was brought. *Collier on Bankruptcy*, 767. Where a partnership and also the individual members thereof are in bankruptcy, the law provides that the property belonging to the partnership shall be first applied to the payment of partnership debts to the exclusion of individual debts; and, this being true, the four months' limitation would not apply to creditors of an individual partner, when both are in bankruptcy. 1 Fed. Stat. Ann. 550, and cases cited.

McCULLOCH, C. J. J. R. Bowen and George W. Boyd, as copartners, engaged in the mercantile business at Corning, Arkansas, and sustained a loss of the greater portion of their stock of goods by fire. Boyd had purchased an interest in the business a few months before the fire occurred, and paid for his said interest the sum of a thousand dollars, which he had borrowed from his father, James Boyd. After the fire occurred, they sold the remnant of the stock of goods to one Hawks for the sum of $1,480.80, taking in payment the two negotiable promissory notes of the latter for equal sums, one note being payable to Bowen and the other to George W. Boyd. Bowen collected his note, and used the greater portion of the amount in paying partnership debts. Boyd assigned his note to his father in satisfaction of said debt for borrowed money, and the

latter collected the amount of the note from Hawks. The sale to Hawks and the assignment of the note to James Boyd occurred in April, 1909, and on May 28, 1909, certain creditors of the copartnership instituted this action in the chancery court of Clay County against James Boyd to recover the amount collected by him as aforesaid. George W. Boyd and Bowen were made parties defendant. More than four months thereafter the firm of Bowen & Boyd filed a petition in bankruptcy, and subsequently obtained their discharge. Appellee, Sam W. Arnold, was elected trustee by the creditors, and was afterwards, on his own motion, joined as plaintiff in this action. It is alleged in the complaint that Bowen & Boyd were insolvent at the time of the assignment of said note to James Boyd, and that said note was wrongfully and unlawfully assigned to him by George W. Boyd in payment of an individual debt. The answer denies that the assignment of said note was wrongfully or unlawfully made. On final hearing the chancellor decreed in favor of the trustee against James Boyd for the recovery of the sum of $824.40, the amount collected on said note, with interest. The latter appealed.

Section 70 of the National bankruptcy act provides that the trustee "may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication."

The trustee can not sue to set aside a preference given more than four months before the petition in bankruptcy was filed (section 60 Bankruptcy Act); but the four months' limitation does not apply to an action to cancel a fraudulent conveyance made by the bankrupt. General creditors, by filing a bill to cancel a fraudulent conveyance of their debtor, acquire a specific lien on the property conveyed, and gain thereby a priority in the distribution of the fund recovered. *Jones* v. *Arkansas Agricultural Co.*, 38 Ark. 17; *Stix* v. *Chaytor*, 55 Ark. 116; *Senter* v. *Williams*, 61 Ark. 189; *Plummer* v. *School District*, 90 Ark. 236.

The trustee's suit did not displace the preference thus acquired by the creditors in a suit begun more than four months

before the filing of the petition in bankruptcy. *Taylor* v. *Taylor* (N. J.), 45 Atl. 440.

If the case involved a controversy between such creditors and the trustee, the equities of the former would prevail, but the creditors who instituted this action permitted the trustee to join as plaintiff, and have not appealed from the decree in his favor. That eliminates the question of their priority.

The remaining question is as to the right of the trustee to cancel the assignment of the note for alleged fraud in appropriating partnership assets to the payment of the individual debt of one of the copartners. In *Jones* v. *Fletcher*, 42 Ark. 422, this court held (quoting from the syllabus): "The equity of partnership creditors to have the partnership property applied to their debts can be enforced only through subrogation to the like equity of the partners. If, therefore, a partner's interest in the property had been transferred, either by his own sale or by sale under execution aganist him, the equity of the creditors is gone, for the partner has no such equity left to which the creditors can be subrogated; and this whether the sale be to a copartner or to a stranger."

In *Reynolds* v. *Johnson*, 54 Ark. 449, the court adhered to this rule, though expressly recognizing the weight of authority the other way, Again, in *Hudgins* v. *Rix*, 60 Ark. 18, the rule was adhered to, and also in *Conoway* v. *Newman*, 91 Ark. 324, where we declined to overrule it and follow the weight of authority. The rule is now well settled in this State, and it would but add to the confusion and uncertainty in the law for the court to change it. The force of the rule was also recognized in *Bartlett* v. *Meyer-Schmidt Grocer Co.*, 65 Ark. 290, but the court held that it was not applicable in a court of equity in the enforcement of a general assignment for the benefit of creditors which embraced an individual debt of one of the copartners.

The testimony does not warrant a finding that partnership assets were separated and appropriated to the payment of the individual debt of one of the copartners without the consent of the other. The undisputed testimony is to the effect that both partners consented that the debt of Hawks for the purchase of the stock of goods be divided into two negotiable notes payable to them separately. Nothing was said at the

time about applying the fund collected to partnership debts. The circumstances all show that they expected the other assets (the uncollected fire insurance policy and outstanding accounts) would be sufficient to pay the debts, and that each could do as he pleased with the notes. Bowen made no complaint, and the consent impliedly given to his copartner to use the note for his private purposes could not be withdrawn after the assignment thereof. The most that can be said is that, after ascertaining the insufficiency of the remaining assets to satisfy the partnership debts, Bowen expressed the preference that the proceeds of the note should have been applied on the partnership debts; but, as before stated, that was after the note had been assigned to James Boyd and collected, and it was therefore too late to withdraw his consent. His equities were lost and likewise those of the creditors, which could only be worked out through him.

There is no testimony tending to show that the alleged debt to James Boyd was simulated, or that the note was assigned with fraudulent intent to hinder creditors. The transaction is shown to have been entirely free from actual fraud. It does not appear even that James Boyd was put on notice that the firm was insolvent.

We are therefore of the opinion that the learned chancellor erred in cancelling the assignment and decreeing recovery of the amount collected on the note. The decree is reversed, and the complaint is dismissed for want of equity.